UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MEMORANDUM & ORDER** |
| Plaintiff, | 04-CR-00619 (HG) |
| v. | |
| MICHAEL HANAKIS, | |
| Defendant. | |

**HECTOR GONZALEZ**, United States District Judge:

Defendant has asked the Court to enter an order that deems his restitution obligation satisfied because of a private settlement that he has reached with the victim of the crime for which he was convicted. *See* ECF No. 92. Alternatively, Defendant has asked the Court to modify the payment schedule for his restitution obligation in light of the settlement and his changed economic circumstances. *See* ECF No. 98. For the reasons set forth below, the Court denies Defendant's request to terminate his restitution obligation because the Court lacks authority to grant that relief. However, after taking into account the deterioration in Defendant's economic circumstances since his sentencing, the Court modifies Defendant's payment schedule, pursuant to 18 U.S.C. § 3664(k), so that he need only pay 10% of his net monthly income towards his restitution obligation each month.

## BACKGROUND

Defendant was sentenced in 2007 after being convicted at trial of one count of conspiracy to commit mail fraud and thirteen counts of individual instances of mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349. ECF No. 91 at 3. As part of Defendant's sentence, he was ordered to pay $8 million in restitution to Wells Fargo Century. *Id.* at 7. Judge Gleeson, who presided over Defendant's sentencing, set a payment schedule for Defendant's restitution obligation, which

required Defendant to pay 25% of his "net monthly income after release." *Id.* at 8. Defendant's sentence included a term of incarceration of 192 months, and the Bureau of Prisons' records indicate that he was released in April 2019. *See id.* at 4.[1] Based on that release date, Defendant's liability to pay restitution will continue until April 2039. *See* 18 U.S.C. § 3613(b) (providing in relevant part that "[t]he liability to pay restitution shall terminate . . . 20 years after the release from imprisonment of the person ordered to pay restitution").

This July, an entity named Wells Fargo Trade Capital Services, Inc. ("Wells Fargo"), which is a successor entity to Wells Fargo Century, filed a signed statement that Defendant's restitution obligation had been "fully satisfied." ECF No. 91 at 1. Defendant did not, however, pay his restitution in full; he instead purported to settle his restitution obligation in exchange for paying Wells Fargo a lump sum of $65,000. ECF No. 98-4 at 3; ECF No. 98 at 1. Defendant represents that he obtained this money through gifts or loans from "family and friends." ECF No. 98 at 2. He claims that Wells Fargo, with the assistance of counsel, performed six months of "due diligence" and concluded that accepting this lump sum payment provided the company with "an amount far greater" than it could expect to collect through the payment plan in Defendant's judgment. *Id.*

Although Defendant prefers that the Court entirely terminate his restitution obligation to Wells Fargo, he has requested in the alternative that the Court adjust his payment schedule, so that he need only pay 10% of his "taxable income" each month. *Id.* at 4. Defendant also asks the Court to absolve him from making any payments for the next 130 months. *Id.* His rationale for this request is that he has been paying approximately $500 each month according to the current schedule, and his $65,000 settlement is equal to 130 monthly payments of $500. *Id.*

---

[1]   *See* FED. BUREAU OF PRISONS, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Dec. 7, 2022).

## DISCUSSION

A judgment that imposes restitution is final, and the Court "cannot modify the total restitution amount" unless one of the limited exceptions set forth in 18 U.S.C. § 3664(o) applies. *See United States v. Metellus*, No. 08-cr-332, 2020 WL 1864888, at *2 (E.D.N.Y. Apr. 14, 2020) (citing *United States v. Kyles*, 601 F.3d 78, 83 (2d Cir. 2010)). The exceptions that allow the Court to change the amount of a defendant's restitution obligation all relate to circumstances that Defendant does not allege apply here. *See United States v. Teeple*, No. 13-cr-339, 2016 WL 1328939, at *2 (S.D.N.Y. Apr. 5, 2016) (summarizing the various exceptions).[2] A defendant's total restitution amount cannot be changed even if the victim to whom a defendant owes restitution has agreed to "accept a single lump sum payment" in lieu of receiving a potentially larger amount "over an extended period of time." *Id.* at *1 (denying motion to "reduce the restitution amount" defendant owed under such circumstances).

The Court rejects Defendant's argument that it has authority under the All Writs Act to terminate Defendant's restitution obligation. *See* ECF No. 98 at 1 (citing 28 U.S.C. § 1651). In the case on which Defendant principally relies for this supposed authority, the court invoked the All Writs Act to terminate a defendant's restitution obligation because the defendant had caused his company to forgive a default judgment owed by the victim's company. *United States v. Baudanza*, No. 06-cr-181, 2014 WL 795639, at *1, *7 (E.D.N.Y. Feb. 27, 2014). The court deemed this use of the All Writs Act to be in furtherance of the authority granted to the court by the Mandatory Victims Restitution Act, which allows courts to order in-kind payments of

---

[2] These exceptions authorize a court to modify a defendant's restitution amount: (i) "to correct a sentence that resulted from arithmetical, technical, or other clear error"; (ii) in connection with "appeals of sentences and resentencing after such appeals"; (iii) after collecting information about "losses unascertainable at the time of sentencing"; or (iv) after resentencing a defendant because of a failure to pay restitution or a violation of supervised release or probation. *Teeple*, 2016 WL 1328939, at *2 (citing 18 U.S.C. § 3664(o)).

restitution as an alternative to monetary payments. *Id.* at *3 (citing 18 U.S.C. § 3664(f)(3)(A)). The pivotal fact in the court's analysis was that the amount of the default judgment significantly exceeded the defendant's restitution obligation; in fact, it was more than four times larger. *Id.* at *1, *7. The court expressly said that it would have reached the opposite decision if it had been presented with the same circumstances as Defendant's case—*i.e.*, a defendant who had reached a private settlement with the victim for an amount less than the defendant's restitution obligation. *Id.* at *7. Under such circumstances, the court explained, "[t]he All Writs Act cannot be invoked to issue relief that would absolve the defendant of his obligation to pay the victim's losses in full, and therefore cannot be invoked to deem an obligation satisfied pursuant to the terms of a private settlement that diminishes the value of the restitution order." *Id.*

Furthermore, since the *Baudanza* decision, the Second Circuit has cast doubt on whether a court may invoke the All Writs Act to vacate a defendant's restitution obligation. *See United States v. Rutigliano*, 887 F.3d 98, 107–09 (2d Cir. 2018) (denying defendant's request to vacate restitution obligation "through a writ of error *coram nobis* pursuant to the All Writs Act"). The Second Circuit explained that even if the All Writs Act might theoretically authorize a court to decrease the amount of a defendant's restitution, such relief is limited to cases in which the defendant can prove that the district court committed a "fundamental error" when imposing restitution during the sentencing process. *Id.* at 108; *see also United States v. Pierce*, No. 12-cr-340, 2021 WL 3722743, at *1–2 (S.D.N.Y. Aug. 23, 2021) (applying "fundamental error" standard when denying request made "pursuant to the All Writs Act" to vacate or reduce restitution obligation). Here, Defendant does not allege that Judge Gleeson committed any error at all; instead, Defendant argues that his subsequent settlement justifies vacating the restitution

4

order.  Since Defendant cannot prove that his restitution obligation is the product of any error, the Court declines to vacate or decrease his restitution obligation pursuant to the All Writs Act.

  Although the Court may not decrease Defendant's restitution obligation, it does have the authority to grant Defendant's alternative request to change the schedule of his restitution payments, which currently requires Defendant to pay 25% of his net monthly income towards his restitution obligation.  "A court may adjust a restitution payment schedule—as opposed to the restitution amount—based on 'any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.'"  *United States v. Rodriguez*, No. 01-cr-497, 2022 WL 16849075, at *2 (S.D.N.Y. Nov. 10, 2022) (quoting 18 U.S.C. § 3664(k)); *see also United States v. Rivera*, No. 96-cr-1044, 2021 WL 4972493, at *1 (E.D.N.Y. Oct. 26, 2021) (explaining that 18 U.S.C. § 3664(k) "permit[s] a district court to adjust a restitution payment schedule if a defendant shows a material change in economic circumstances").  "In determining whether a material change has occurred, courts compare 'a defendant's financial condition before and after a sentence is imposed.'"  *United States v. Moglia*, 573 F. Supp. 3d 850, 852 (E.D.N.Y. 2021) (quoting *United States v. Grant*, 235 F.3d 95, 100 (2d Cir. 2000)).

  The Court finds that Defendant has shown a significant deterioration in his economic circumstances.  At the time Defendant was sentenced, the Probation Department collected his four most recent years of tax returns, which showed that his average annual adjusted gross income for that period was $52,809.00.  ECF No. 88 at 22.  As part of his current motion, Defendant has provided tax returns for the past four years, which show an average annual adjusted gross income of $20,140.50.  ECF No. 98-6 at 2, 23, 41, 44.  This means that Defendant is earning approximately 60% less than what he had been earning before he was sentenced.  Therefore, decreasing his scheduled restitution payments from 25% of his net monthly income,

5

as originally required by the judgment containing his sentence, to 10% of his net monthly income is reasonable. *See* ECF No. 91 at 8. This 60% decrease in his required rate of payment is commensurate with the approximately 60% decrease in his income. For the avoidance of doubt, in deciding to grant this relief, the Court has considered only Defendant's decrease in income and not his assertions that he borrowed some portion of his settlement with Wells Fargo from family and friends. *See United States v. Little*, No. 12-cr-647, 2021 WL 1226890, at *3 (S.D.N.Y. Apr. 1, 2021) (holding that defendant's having "borrowed some unspecified additional sum from friends [wa]s not a material change" in his economic circumstances).

The Court will not absolve Defendant from making restitution payments for the next 130 months, which he has argued is justified by his settlement with Wells Fargo. *See* ECF No. 98 at 4. Reducing Defendant's restitution obligation to zero for nearly 11 years comes impermissibly close to reducing the total amount of Defendant's restitution, which the Court cannot do for the reasons explained above. This is especially true because Defendant's obligation would continue for less than six years after the end of his proposed reprieve, at which point Defendant might be earning no income, based on his statements that he is already considering ceasing his current work as a delivery driver and living solely from Social Security retirement benefits. *See* ECF No. 98 at 3; *see also* 18 U.S.C. § 3613(b).

The Court is not persuaded that requiring Defendant to continue monthly payments to Wells Fargo, despite his settlement, would represent an unfair outcome for Defendant's family and friends who contributed to his settlement funds. *See* ECF No. 98 at 2, 5. The same misconduct attributed to Defendant in his criminal case also led to a $24 million civil judgment for Wells Fargo against him—based on treble damages under the Racketeer Influenced and Corrupt Organizations Act—so Defendant had an incentive to reach a settlement with Wells

6

Fargo regardless of the restitution obligation. *See* ECF No. 98-4 at 1; *see also Wells Fargo Century, Inc. v. Hanakis*, No. 04-cv-1381 (E.D.N.Y. filed Jan. 9, 2006) (ECF No. 30). And once Defendant received that substantial inflow of funds from his friends and family, if the Court had been aware of it, the Court could have ordered Defendant immediately to have paid some or all of that money towards his restitution obligation. *See United States v. Gioeli*, No. 08-cr-240, 2019 WL 6173421, at *8–9 (E.D.N.Y. Nov. 20, 2019) (discussing a court's authority to "adjust[] the payment schedule or even requir[e] immediate payment in full" upon defendant's receipt of settlement proceeds).

Finally, the Court rejects Defendant's request to reduce the amount of restitution he owes by whatever amounts his co-defendants may have paid. *See* ECF No. 98 at 5–6. Defendant is correct that when a court orders multiple co-defendants each to pay the entirety of a victim's loss as restitution, "doing so does not entitle the victim to a double recovery." *United States v. Yalincak*, 30 F.4th 115, 122 (2d Cir. 2022). Accordingly, the Government and Wells Fargo can "no longer collect" from Defendant once he and his co-defendants have, in the aggregate, paid the full restitution amount. *Id.* at 123. However, neither Defendant nor the Government has provided any information indicating what amount of restitution Defendant's co-defendants have paid, and Defendant has not asserted that they have paid the full amount. *See* ECF No. 98 at 5–6. If and when Defendant and his co-defendants collectively pay back the entire $8 million that they owe to Wells Fargo, the Court will deem Defendant's restitution obligation to have been satisfied. But the Court will not amend the judgment against Defendant now to decrease his restitution obligation by whatever unspecified amount his co-defendants may have paid.

7

## **CONCLUSION**

For the reasons described above, the Court DENIES the portion of Defendant's motion that seeks to terminate his restitution obligation and GRANTS his alternative request to adjust downward the portion of his income that he must pay towards his restitution obligation each month.  *See* ECF Nos. 92 & 98.  Defendant shall pay 10% of his net monthly income towards his restitution obligation each month.  The Court will enter an amended judgment reflecting the adjusted payment schedule.

SO ORDERED.

       */s/ Hector Gonzalez*
       HECTOR GONZALEZ
       United States District Judge

Dated: Brooklyn, New York
       December 7, 2022